

**STEVEN T. HENESY**
PARTNER
(516) 357-3308
steven.henesy@rivkin.com

WWW.RIVKINRADLER.COM

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000 F 516.357.3333

August 4, 2023

**By ECF**
Honorable Frederic Block
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   Government Employees Insurance Company, et al. v. Zaitsev, et al.
      Docket No.: 1:20-cv-003495 (FB)(SJB)

Dear Judge Block:

We write on behalf of Plaintiffs ("GEICO" or "Plaintiffs") to respectfully request a pre-motion conference or, in the alternative, a briefing schedule for Plaintiffs' proposed motion for summary judgment against Defendants Alexandr Zaitsev, M.D. ("Zaitsev"), Anthony Benevenga, Charles Nicola, D.C., and Ridgewood Diagnostic Laboratories, L.L.C. ("Ridgewood") (collectively, the "Ridgewood Defendants").

GEICO filed this case against the Defendants in August 2020. *See* ECF No. 1. On December 17, 2021, GEICO filed an Amended Complaint. *See* ECF No. 141.  In its Amended Complaint, GEICO contends that the Defendants – led by Zaitsev – orchestrated a massive no-fault insurance fraud scheme through which they defrauded GEICO into paying more than $4,500,000.00 in no-fault insurance benefits to which the Defendants were not entitled. GEICO asserts several theories for the Defendants' ineligibility to collect no-fault benefits and – by extension – theories of the Defendants' fraudulent submissions.

Two of those theories would serve as the bases for Plaintiffs' proposed summary judgment motion: (i) Zaitsev secretly owned and controlled two medical practices, Tri-State Multi-Specialty Medical Services, P.C. ("Tri-State") and Riverside Medical Services, P.C. ("Riverside"), and used those practices to facilitate urine drug testing ("UDT") referrals to his clinical laboratory, Ridgewood; and (ii) many of the Ridgewood Defendants' bills for UDT misrepresented that they were eligible for reimbursement, when in fact they were not because, among other things, the UDTs were never authorized by a licensed physician.

I.      **Unauthorized and Medically Unnecessary UDT**

In New York, with limited exceptions not applicable here, "a clinical laboratory shall examine specimens only at the request of licensed physicians or other persons authorized by law to use the findings of laboratory examinations in their practice or the performance of their official duties." *See* 10 N.Y.C.R.R. § 58-1.7(b); *see also Cont'l Lab'y Inc. v. Perales*, 188 A.D.2d 767, 767–68, 591 N.Y.S.2d 558, 558 (3d Dept. 1992) ("investigation disclosed that [laboratory]'s services had not been ordered by a licensed physician or other qualified professional, in violation of 10 NYCRR 58–1.7(b)….").

Similarly, in New Jersey, clinical laboratories shall not "[a]ccept specimens for tests from and make reports to persons who are not legally qualified or authorized to submit specimens to clinical laboratories and to receive such reports…." *See* N.J.S.A. § 45:9-42.42(c). In that context, in New Jersey, "[a]ll orders for clinical laboratory services shall be in the form of an explicit order personally signed by the physician or other licensed practitioner requesting the services…." *See* N.J.A.C. 10:61-1.6(a).

Here, it is undisputed that a large number of the Ridgewood Defendants' billed-for UDT "requisition" forms were not signed by a licensed practitioner. Moreover, it is undisputed that, in their respective depositions, both Allan Weissman, M.D. and Eugene Gorman, M.D. (excerpts attached as Exhibits "1" and "2") – both of whose names were routinely listed on the requisition forms as having "ordered" the UDT from Ridgewood – testified that, if the requisition forms were unsigned, they had <u>not</u> authorized the test. *See* Weissman Depo., 296: 16-25; 297: 2-25; 298: 2-17; Gorman Depo., 42: 14-25; 43: 2-3. Even so, the Ridgewood Defendants routinely submitted bills to GEICO falsely representing that the billed-for UDT had been authorized by a licensed physician, when in fact it had not been. A representative sample is attached as Exhibit "3".

Moreover, it is undisputed that portions of the UDTs were undeniably medically unnecessary. For example, the Ridgewood Defendants submitted a charge for testing for 6-MAM, a heroin metabolite, in virtually all their UDT billing under Current Procedural Terminology ("CPT") code 80356. Similarly, the Ridgewood Defendants submitted a charge for testing for methylenedioxyethylamphetamine ("MDEA") in virtually all their UDT billing under CPT code 80353. There was no medical necessity to support testing for either substance, as the testing was either of no toxicological significance, was duplicative of the other testing provided through Ridgewood, or both. The testimony on this issue is unchallenged.[1] All told, the Ridgewood Defendants submitted at least $371,942 in billing to GEICO for UDT for unnecessary 6-MAM and MDEA screens.

## II.    Illegal Self-Referrals

New York Public Health Law § 238-a "prohibits certain health care service providers… from referring the performance of services such as laboratory tests and physical therapy, to those with whom they have financial relationship." *Cambridge Med., P.C. v. Allstate Ins. Co.*, 899 F. Supp. 2d 227, 232 (E.D.N.Y. 2012) (citing N.Y. Pub. Health Law § 238–a(1)(a)). This prohibition applies not only to direct self-referrals, but to schemes or arrangements designed to circumvent the ban on self-referrals:

> Subdivision one of this section shall apply to an arrangement or scheme, such as a cross-referral arrangement, which the practitioner or health care provider knows or should know has a principal purpose of assuring referrals by the practitioner for clinical laboratory services…to a particular health care provider which, if the practitioner directly made referrals to such health care provider, would be in violation of subdivision one of this section.

*See* N.Y. Pub. Health Law § 238-a(9).

---

[1] While the medical necessity of some aspects of the UDT may be the subject of a fact question inhibiting summary judgment, these specific portions of the testing are not. Contemporaneous with this letter, Plaintiffs are filing a separate request for a pre-motion conference to exclude the testimony of the Defendants' proffered expert witness, James Patrick Murphy, M.D. However, even if the Court does not exclude Dr. Murphy's testimony, neither Dr. Murphy nor any witness in this case has offered (or could offer) any testimony or evidence to rebut Plaintiffs' toxicology expert testimony concerning the Ridgewood Defendants' assembly-line testing for 6-MAM and MDEA.

"In the event that Section 238–a is violated, neither the referring provider nor the provider of the service are entitled to payment from a third-party insurer…". *Cambridge Med., P.C.*, 899 F. Supp. 2d 227, 232; *see also Gov't Emps. Ins. Co. v. Jacobson*, No. 15-CV-07236, 2021 WL 2589717, at *1 (E.D.N.Y. June 24, 2021) ("A practitioner is not eligible for PIP benefits arising from an illegal referral through an entity in which he has a financial interest.")(citing *Fair Price Med. Supply Corp. v. ELRAC Inc.*, 12 Misc. 3d 119, 121–22 (N.Y. App. Term 2006)).

Similarly, under New Jersey law, "[a] practitioner shall not refer a patient or direct an employee of the practitioner to refer a patient to a health care service in which the practitioner, or the practitioner's immediate family, or the practitioner in combination with the practitioner's immediate family has a significant beneficial interest . . .." *See* N.J.S.A. 45:9-22.5. "Like in New York, [practitioners] who engage in unlawful self-referrals are ineligible for PIP benefits in New Jersey." *See Jacobson*, 2021 WL 2589717, at *2 (citing *Allstate Ins. Co. v. Scott Greenberg, D.C.*, 871 A.2d 171, 179 (N.J. Super. Ct. Law Div. 2004)).

The undisputed evidence in this case clearly establishes that Zaitsev – through his secret ownership and control over Tri-State and Riverside – caused those practices to unlawfully self-refer patients to Ridgewood for UDT. That undisputed evidence comes from a variety of sources.

- Neither of the putative owners of Tri-State and Riverside – Weissman and his successor, Sangavaram – has claimed, during this lawsuit, that they ever actually owned and controlled those practices. For his part, <u>Weissman has affirmatively stated the opposite: that it was Zaitsev who controlled Tri-State and Riverside</u>. And Sangavaram invoked the Fifth Amendment in response to questions as to whether he agreed with Zaitsev to falsely pose as the owner of Tri-State and Riverside.
- The structure of the supposed transfer of Tri-State and Riverside from Weissman to Sangavaram indicates that Zaitsev was the true owner and controller of the underlying medical practices all along. When Weissman "transferred" Tri-State and Riverside to Sangavaram (whom Zaitsev hand-selected to be the new purported "owner"), Weissman did so for free *via* an assignment and assumption agreement. At the same time, Zaitsev purported to sell the "assets" of his dormant medical practices, which Zaitsev's own sale documents indicated were the medical practices that had been operating under the names Tri-State and Riverside all along. In other words, when it came time to transfer Tri-State and Riverside from Weissman to Sangavaram, ownership of the only assets of any value – the medical practices that had been operating as Tri-State and Riverside – was claimed by Zaitsev, not Weissman.
- testimony from the employees of Tri-State and Riverside indicated that they believed they were working for Zaitsev, not Weissman or Sangavaram.
- Tri-State and Riverside's financial transactions were executed by Mark Kaminar, Zaitsev's personal accountant for more than a decade, who also served as the unofficial "COO" of Zaitsev's medical practices.
- Funding companies owned, in part, by Zaitsev entered into supposed funding agreements with Tri-State and Riverside containing predatory terms designed to control the inflow of funds to Tri-State and Riverside.

These are only examples of the mountain of evidence amassed by Plaintiffs in this action. And, besides a conclusory denial by Zaitsev, there is simply not a shred of evidence to suggest that anyone other than Zaitsev owned and controlled Tri-State and Riverside and directed UDT referrals from those practices to Ridgewood – a clear violation of New York and New Jersey's self-referral laws. These violations rendered Ridgewood ineligible to collect on the resulting UDT billing, and GEICO is therefore entitled to summary judgment against the Ridgewood Defendants on this basis as well.

We appreciate the Court's time and attention to this matter.

                                                   Respectfully submitted,

                                                   RIVKIN RADLER LLP

                                                   /s/ *Steven T. Henesy*
                                                 Steven T. Henesy

cc:       All counsel of record (by ECF)

7618204.v3