

**STEVEN T. HENESY**
PARTNER
(516) 357-3308
steven.henesy@rivkin.com

WWW.RIVKINRADLER.COM

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000  F 516.357.3333

August 4, 2023

**By ECF**
Honorable Frederic Block
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:   Government Employees Insurance Company, et al. v. Zaitsev, et al.
        Docket No.: 1:20-cv-003495 (FB)(SJB)**

Dear Judge Block:

We write on behalf of the Plaintiffs ("Plaintiffs" or "GEICO") to respectfully request a pre-motion conference or, in the alternative, a briefing schedule for Plaintiffs' proposed motion pursuant to Fed. R. Civ. P. 26(a) and Fed. R. Evid. 702 to exclude the testimony of defense rebuttal expert James Patrick Murphy, M.D.

On January 17, 2023, Plaintiffs disclosed and produced reports for four affirmative expert witnesses in this case: a medical expert, a toxicology expert, a forensic accounting expert, and a statistician. On March 20, 2023, Defendants Alexandr Zaitsev, M.D., Ridgewood Diagnostic Laboratory, L.L.C., Metropolitan Interventional Medical Services, P.C. , Anthony Benevenga, Charles G. Nicola, D.C., Eugene Gorman, M.D., Bogdan Negrea, M.D., Antonio Ciccone, D.O., Stella Amanze, P.A., Frida Isakov, P.A., Lucknie Ovincy, P.A., Emily Bakerman, N.P., Melissa Evans, N.P., Mini Matthew, N.P., Angela Pullock, N.P., Linda Santa Maria, N.P., and Rivka Weiss, N.P. (collectively, the "Defendants") served a rebuttal expert report from Dr. Murphy, which purported to rebut Plaintiffs' medical and toxicology expert disclosures. A copy of Dr. Murphy's report is attached as Exhibit "1".

In his report, Dr. Murphy states that his opinions concern "the Defendants' medical necessity, appropriateness, and overall clinical practice with regard to drug screening of their patients, and rebutting the opinions contained in the expert reports of Elizabeth Spratt, M.S., F-ABT ("Spratt") and Naum Shaparin, M.D. ("Shaparin")". *See* Murphy Report, p. 1. Dr. Murphy summarizes his substantive opinions as follows: "In sum, the Defendants' policies, procedures, and utilization of drug screens in caring for their patients, were reasonable, medically necessary, in the usual course of professional practice, for a legitimate medical purpose, and consistent with the applicable standard of care." *See id*., p. 2.

Dr. Murphy's opinions should be excluded for various reasons, including those outlined below.

**I.     Dr. Murphy Does Not Appear to Have Reviewed Any Patient Files**

In his report, Dr. Murphy claims that his opinions are based on a supposed review of the following materials: (i) "medical records, prescription data, and other items related to patients of the Defendants with the initials: WV, IE, MR, SA"; (ii) Plaintiffs' toxicology and medical expert reports; and (iii) transcripts of the depositions of Defendants Eugene Gorman, M.D. and Alexandr Zaitsev, M.D. *See* Murphy Report, p. 4.

Upon receiving Dr. Murphy's report, Plaintiffs requested that counsel for the Defendants identify by name the patients listed in Dr. Murphy's report by the initials WV, IE, MR, and SA. On April 19, 2023, after five requests by Plaintiffs, counsel for the Defendants finally provided Plaintiffs with a 100-page PDF document containing patient records, with a notation from the Defendants' counsel that the names of the patients listed in the report by initials were contained in those records. However, <u>during Dr. Murphy's deposition, he was unable to confirm that he had ever even seen the records provided by the Defendants' counsel to Plaintiffs</u>. *See*, *e.g.*, Murphy Depo., 122:23-25, 123:4-16; 148:6-8; 152:5-13; 160:4-9. Nor was Dr. Murphy able to state who selected the "sample" files (other than to say he had not) or what percentage of the total patient population in this case that "sample" represented. *See id*., 13:25-14:25. A copy of the transcript of Dr. Murphy's deposition is attached as Exhibit "2".

In this context, Rule 26(a)(2)(B) requires a testifying expert's report to contain "the facts or data considered by the witness in forming" his or her opinions. "[C]ourts may strike expert reports if they are insufficiently detailed and complete to satisfy Rule 26(a)(2)." *Conte v. Newsday, Inc.*, No. 06-cv-4859, 2011 WL 2671216, at *4 (E.D.N.Y. July 7, 2011). Because Dr. Murphy could not link any individual patients to the initials listed in his report – and could not say whether the files identified by the Defendants' counsel were, in fact, the files he reviewed – the Court should strike the report and preclude Dr. Murphy's testimony. *See*, *e.g.*, *El Ansari v. Graham*, No. 17-cv-3963, 2019 WL 3526714, at *7 (S.D.N.Y. Aug. 2, 2019) (excluding expert testimony from a psychologist who failed to review any of the pertinent medical records).

Even if Dr. Murphy <u>did</u> review any patient files in this case – and it appears that he did not – he reviewed, at most, four (4) files. As set forth in Plaintiffs' statistician's expert report (attached as Exhibit "3"), there are <u>thousands</u> of claims at issue in this lawsuit. In that context, this is not the first case in which Dr. Murphy has attempted to use a small sample of patient files to extrapolate his findings across an entire patient population. And, when he has attempted to do so, Courts have precluded him from offering testimony about any patients not specifically referenced in his report. *See*, *e.g.*, *United States v. Sisco*, No. 7:20-cr-00023, ECF No. 76 (E.D. Ky. Oct. 27, 2021)[1] (precluding Dr. Murphy from discussing any patients other than those specifically referenced in his report); *United States v. Taylor*, No. 6:21-cr-00013, 2023 WL 3010156, at *7 (E.D. Ky. April 19, 2023) (same).

## II.  The Scope of Dr. Murphy's Opinions is Impermissibly Vague

Moreover, Dr. Murphy's report does not indicate the scope of his opinions as they related to the thousands of claims at issue in this case. And Dr. Murphy's deposition testimony indicated that he was unsure as to the actual scope of the opinions he is offering in this case – and instead was only able to say that he was offering an opinion about the "majority" of the patients who treated at "a pain clinic", the name of which he did not know. *See*, *e.g.*, Murphy Depo., 55:8-12. This, too, renders Dr. Murphy's report and proffered opinions impermissibly vague.[2] *See*, *e.g.*, *Ferriso v. Conway Org.*, 93 Civ. 7962(KMW), 1995 WL 580197 at *2 (S.D.N.Y. Oct. 3, 1995) ("Rule 26 requires, not just that expert testimony be on notice, but that notice be given in the form of a written report which '*shall* contain a *complete* statement of *all* opinions to be expressed and the *basis* and *reasons* therefor.'")(quoting Rule 26, emphasis added by the Court)).

---

[1] A copy of the Court's order concerning Dr. Murphy in *United States v. Sisco* is attached as Exhibit "4".

[2] By contrast, Plaintiffs disclosed report from a statistician, who performed a random sampling of a statistically-significant number of claims – numbering in the hundreds – that were then reviewed by Plaintiffs' toxicology and medical experts.

### III. Dr. Murphy's Opinions Purport to Speak to the Defendants' Intent

In addition, Dr. Murphy intends to improperly offer testimony about the intent and subjective mental states of the Defendants. Specifically, in his report, Dr. Murphy opines that the Defendants' UDTs were "for a legitimate medical purpose." *See* Murphy Report, p. 2 (emphasis added). Along similar lines, Dr. Murphy's definition of "medical necessity" – besides being overbroad and forgiving to the point of absurdity – requires, according to him, a determination as to whether the service was provided "in order to benefit and help the patient get well." *See* Murphy Depo., 45:8-19. However, Dr. Murphy conceded during his deposition that he did not speak with any of the Defendants, and explicitly admitted that he was assuming that the Defendants had a subjective, clinical justification for the ordering of the UDTs. *See id.*, 51:2-17 ("Q: But you are assuming that as the reason. Isn't that right, Doctor? A: Yes."). Other Courts have precluded Dr. Murphy from offering similar testimony. *See, e.g., Sisco*, No. 7:20-cr-00023, ECF No. 76, p. 8 ("The Court will not permit Dr. Murphy to characterize or vouch for the "goals" of the [defendant] business….the Court will not allow Dr. Murphy to opine regarding intent. The Court views the notion of [defendant's] 'goals' as a synonym for intent"); *Taylor*, 2023 WL 3010156, at *3 (precluding Dr. Murphy from testifying that the defendants' prescribing was "with the intent to improve the quality of their patients' lives.").

### IV. Dr. Murphy's Opinions Lack a Sufficient Factual Basis

Moreover, Dr. Murphy's testimony is subject to exclusion because his "opinions" – to the extent articulable at all – lack a sufficient factual basis, and would therefore confuse, rather than assist, the factfinder. For instance, Dr. Murphy devotes a substantial portion of his report to a discussion about the efficacy of UDT in the context of a course of opioid pain management. *See, e.g.,* Murphy Report, pp. 4 (discussing "[o]ur nation's expanding overdose crisis mandates increased caution when prescribing controlled substances"), 5 (noting that "[s]ubstance misuse has been documented at over 30% in patients on opioid therapy"), 10 (opining that UDT is a "risk evaluation and mitigation strategy" in the context of "opioid prescribing"). However, during his deposition, Dr. Murphy admitted that, in the records he supposedly reviewed, he could not name a single instance in which a patient was ever prescribed a controlled substance by the Defendants in this case.[3] Whatever else can be said of Dr. Murphy's opinions regarding opioid pain management – and their putative service as a justification for UDT – they have no application to this case, as there is no evidence that the Defendants routinely – if ever – prescribed controlled substances.

There is, of course, little doubt that the United States has an ongoing opioid crisis. However, Dr. Murphy's invocation of that crisis as a pretextual, after-the-fact justification for the Defendants' UDT practices – when there is no evidence that Defendants were prescribing opioids (or any controlled substances for that matter) with any regularity, if at all – would impermissibly confuse and inflame the jury, and play to the jury's sympathies regarding a wholly-irrelevant public health crisis. Dr. Murphy's testimony should be excluded on this basis as well. *See, e.g., Luizzi v. Pro Transp., Inc.*, No. 02-cv-5388, 2011 WL 13272658, at *9 (E.D.N.Y. Oct. 21, 2011) ("it is an essential element of the expert's report that he review the evidence considered and explain his reasoning based on that evidence before the Court can analyze the reliability of his conclusions."); *Travelers Indem. Co. v. Northrop Grumman Corp.*, No. 12-cv-3040, 2014 WL 464769, n. 3 (S.D.N.Y. Jan. 28, 2014) (excluding expert opinion under Rule 403 where opinion assumed the truth of an unestablished factual issue and "could therefore confuse the jury").

---

[3] While this concession is noteworthy, it was not surprising. As former Defendant Allan Weissman, M.D. noted in his affidavit in this case (ECF No. 82-3), Tri-State and Riverside's patients were prescribed narcotics in only a small percentage of cases.

We appreciate the Court's time and attention to this matter.

                                              Respectfully submitted,

                                              RIVKIN RADLER LLP

                                              /s/ *Steven T. Henesy*
                                              Steven T. Henesy

cc:      All counsel of record (by ECF)

7636439.v3