

WWW.RIVKINRADLER.COM

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000 F 516.357.3333

**STEVEN T. HENESY**
PARTNER
(516) 357-3308
steven.henesy@rivkin.com

August 11, 2023

**By ECF**
Honorable Frederic Block
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   Government Employees Insurance Company, et al. v. Zaitsev, et al.
      Docket No.: 1:20-cv-003495 (FB)(SJB)

Dear Judge Block:

We write on behalf of Plaintiffs ("GEICO" or "Plaintiffs") in response to the letter from Defendants Alexandr Zaitsev, M.D. ("Zaitsev"), Anthony Benevenga, Charles Nicola, D.C., and Ridgewood Diagnostic Laboratories, L.L.C. ("Ridgewood") (collectively, the "Defendants") requesting a premotion conference for their proposed motion for summary judgment (ECF Nos. 176-177).

In their letter, the Defendants contend that they are entitled to summary judgment in this case on all of GEICO's claims because GEICO is – supposedly – pursuing a novel and "unprecedented" legal theory in this action and is – supposedly – seeking to impermissibly extend the New York State Court of Appeals' decision in *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313 (2005). The Defendants also claim that they are entitled to summary judgment on: (i) GEICO's fraud-based claims because, according to the Defendants, GEICO cannot establish the "intent" and "reliance" elements of those claims; and (ii) GEICO's unjust enrichment claim because, according to the Defendants, "[a]ny monies received for work or testing actually done cannot constitute unjust enrichment." *See* ECF No. 177, *passim*.

These contentions are meritless for multiple, independent reasons. First, GEICO's claims in this action are far from novel. Indeed, contrary to the Defendants' misplaced contentions regarding *Mallela*, it is well-settled that healthcare providers are not eligible to bill for or collect no-fault benefits if they fail to meet any New York State or local licensing requirements necessary to provide the underlying services.  *See* 11 N.Y.C.R.R. § 65-3.16(a)(12). That regulation's purpose is "to assure that all providers rendering care under the No-Fault system are properly licensed in conformity with all applicable laws" and to "enhance the quality of care provided to eligible injured parties by insuring that those delivering reimbursable services are held to the appropriate professional standards." *See* 2004-40 N.Y. St. Reg. 12, 14 (Oct. 6, 2004) at 14. As it relates to this case, *Mallela* serves simply as a basis for GEICO to look beyond a facially valid license to determine whether there was a failure by the healthcare provider to abide by state or local law. *See Mallela*; *Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 33 N.Y.3d 389 (2019); *see also Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 297 (E.D.N.Y. 2013) ("Certainly, the broad language of 11 N.Y.C.R.R. § 65–3.16(a)(12) contemplates ineligibility if the provider fails to meet any New York State or local licensing requirements, not only those requirements subject to a one-time inspection."). The law is substantially similar in New Jersey. *See*, *e.g.*, *Liberty Mut. Ins. Co. v. Healthcare Integrated Servs.*, 2008 WL 2595922, at *2 (N.J. Super. Ct. App. Div. July 2, 2008) ("This court

has held that a provider of such services is not entitled to reimbursement for services covered by PIP unless the provider and the services are in compliance with relevant laws and regulations.").

There is ample evidence that the Defendants operated in pervasive violation of both New York and New Jersey law. For example, in New York "a clinical laboratory shall examine specimens only at the request of licensed physicians or other persons authorized by law to use the findings of laboratory examinations in their practice or the performance of their official duties." *See* 10 N.Y.C.R.R. § 58-1.7(b). Similarly, in New Jersey, clinical laboratories shall not "[a]ccept specimens for tests from and make reports to persons who are not legally qualified or authorized to submit specimens to clinical laboratories and to receive such reports…." *See* N.J.S.A. § 45:9-42.42(c). And, in New Jersey, "[a]ll orders for clinical laboratory services shall be in the form of an explicit order personally signed by the physician or other licensed practitioner requesting the services…." *See* N.J.A.C. 10:61-1.6(a).

In that context, the Defendants do not appear to contest the fact that a large number of the Defendants' billed-for urine drug testing ("UDT") "requisition" forms were not signed by a licensed practitioner. Moreover, it is undisputed that, in their respective depositions, both Allan Weissman, M.D. and Eugene Gorman, M.D. (excerpts filed with the Court at ECF Nos. 174-1 and 174-2) – whose names were routinely listed on the requisition forms as having "ordered" the UDT from Ridgewood – testified that, if the requisition forms were unsigned, they had not authorized the test. *See* ECF No. 174-1, 296: 16-25; 297: 2-25; 298: 2-17; ECF No. 174-2, 42: 14-25; 43: 2-3. Even so, the Ridgewood Defendants routinely submitted bills to GEICO falsely representing that the billed-for UDT had been authorized by a licensed physician, when in fact it had not been.

Moreover, New York Public Health Law § 238-a "prohibits certain health care service providers… from referring the performance of services such as laboratory tests and physical therapy, to those with whom they have financial relationship." *Cambridge Med., P.C. v. Allstate Ins. Co.*, 899 F. Supp. 2d 227, 232 (E.D.N.Y. 2012) (citing N.Y. Pub. Health Law § 238–a(1)(a)). "In the event that Section 238–a is violated, neither the referring provider nor the provider of the service are entitled to payment from a third-party insurer…". *Cambridge Med., P.C.*, 899 F. Supp. 2d 227, 232; *see also Gov't Emps. Ins. Co. v. Jacobson*, No. 15-CV-07236, 2021 WL 2589717, at *1 (E.D.N.Y. June 24, 2021) ("A practitioner is not eligible for PIP benefits arising from an illegal referral through an entity in which he has a financial interest"). Similarly, in New Jersey, "[a] practitioner shall not refer a patient or direct an employee of the practitioner to refer a patient to a health care service in which the practitioner…has a significant beneficial interest . . .." *See* N.J.S.A. 45:9-22.5. "Like in New York, [practitioners] who engage in unlawful self-referrals are ineligible for PIP benefits in New Jersey." *See Jacobson*, 2021 WL 2589717, at *2 (citing *Allstate Ins. Co. v. Scott Greenberg, D.C.*, 871 A.2d 171, 179 (N.J. Super. Ct. Law Div. 2004)).

Here, the undisputed evidence clearly establishes that Zaitsev – through his secret ownership and control over Tri-State and Riverside – caused those practices to unlawfully self-refer patients to Ridgewood for UDT. In their letter, the Defendants do not appear to contest this fact – and instead only dispute its legal significance under their flawed formulation of New York and New Jersey law. The Defendants failure to meaningfully contest GEICO's allegations should come as no surprise, given the mountain of evidence summarized in Plaintiffs' premotion conference letter for their own summary judgment motion (ECF No. 174, p. 3).

In fact, beside their erroneous contention that GEICO's claims fail as a matter of law, the only substantive argument hinted at by the Defendants concerns GEICO's supposed inability to demonstrate the requisite intent and reliance elements of GEICO's fraud-based claims. But these suggestions are misplaced as well. Contrary to the Defendants' contentions, GEICO was entitled to rely on the Defendants' misrepresentations. *See, e.g., Gov't Emps. Ins. Co. v. Strutsovskiy*, No. 12-cv-330, 2017 WL 4837584, at *5 (W.D.N.Y. Oct. 26, 2017) (denying summary judgment and holding that "GEICO is entitled to rely upon the verifications submitted by healthcare providers for purposes of paying no-fault claims—perhaps even as it investigates the veracity of those

verifications for purposes of a broader fraud claim."); *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 375 (E.D.N.Y. 2012) (rejecting a purported reliance defense as "absurd" and noting that "Allstate was entitled to rely on the representations that defendants made to it and to the New York Department of State regarding the ownership of the PCs").

Similarly, the Defendants are wrong when they contend, in conclusory fashion, that GEICO cannot establish that Defendants acted with the requisite scienter. For example, "[i]n New York, a plaintiff pleading fraud may satisfy the scienter requirement by producing evidence of conscious misbehavior or recklessness." *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-cv-2802, 2022 WL 5173745, at *8 (E.D.N.Y. Aug. 24, 2022) (internal quotation omitted). Direct evidence of scienter is rare, but "[i]ndirect evidence may also suffice, if no reasonable factfinder could conclude from it that scienter was absent." *Id*. A "strong inference" of fraudulent intent can be demonstrated either: "(a) by alleging facts to show the defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Gov't Emps. Ins. Co. v. Badia*, No. 13-cv-1720, 2015 WL 1258218, at *15 (E.D.N.Y. Mar. 18, 2015) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006)).

Both are present here. First, Zaitsev had a clear motive to engage in fraud. For example, he admitted during his deposition that his status as an insurance fraud defendant in a series of six (6) separate insurance fraud lawsuits from various automobile insurers between 2014 and 2020 had negatively impacted his reputation and that of his practices. Moreover, Zaitsev confirmed that he was aware that New York and New Jersey's self-referral prohibitions would have prevented him from directly and openly owning Tri-State or Riverside if those practices were to be the sources of patient referrals to Zaitsev's clinical laboratory, Ridgewood. Moreover, the factual record is replete with evidence of Zaitsev's conscious actions in furtherance (and concealment) of the Defendants' scheme, including (but certainly not limited to): (i) Zaitsev's installation of his personal accountant and friend, Mark Kaminar, to handle all of the financial transactions on behalf of Tri-State and Riverside; (ii) Zaitsev's part-ownership of funding companies with which Tri-State and Riverside contracted; (iii) Zaitsev's selection of Weissman and then Sangavaram as the supposed "owners" of Tri-State and Riverside; and (iv) Zaitsev's admitted installation of his mother-in-law – a 76 year-old who emigrated from Russia to the United States in 2017 – as the false owner of a series of entities that received "rent" payments from Tri-State and Riverside.

Moreover, Defendants' contention that "[t]here is not one GEICO patient for which it can be said the mailing of the billing constitutes the predicate act of mail fraud" is incorrect. Given the evidence of the Defendants' pervasive violations of New York and New Jersey law, the Defendants were never eligible to receive no-fault insurance benefits. And the mailing of bills to an insurer that misrepresent that provider's eligibility to receive reimbursement has repeatedly been held to constitute predicate acts of mail fraud in the context of civil RICO claims. *See, e.g., Mayzenberg*, 2022 WL 5173745, at *11 (finding healthcare provider's billing, which mispresented the provider's eligibility to receive no-fault benefits, consisted predicate acts of mail fraud to support summary judgment for GEICO on civil RICO claim).

Finally, Defendants' contention that they supposedly could not have been unjustly enriched because "[a]ny monies received for work or testing actually done cannot constitute unjust enrichment" is also incorrect. To the contrary, the law is clear that, where a healthcare provider operates in violation of New York or New Jersey law, that provider is not entitled to reimbursement, regardless of whether the services were actually performed or necessary. *See, e.g.*, *Carothers*, 33 N.Y.3d 389, 397 (ineligible healthcare provider not entitled to reimbursement "regardless of the quality of care such entities have provided."); *State Farm Ins. Companies v. Junction Diagnostic Radiology, P.A.*, No. MRS-L-3492-99, 2000 WL 34510270, at *2 (N.J. Super. Ct. Law Div. June 20, 2000)("[I]f the health care facility does not comply with all of the significant qualifying requirements, then it is not entitled to receive PIP benefits even if the medical services provided were "reasonable, necessary and related" to the underlying auto accident.").

We appreciate the Court's time and attention to this matter.

                                                  Respectfully submitted,

                                                  RIVKIN RADLER LLP

                                                  /s/ *Steven T. Henesy*
                                                  Steven T. Henesy

cc:      All counsel of record (by ECF)