**SCHWARTZ, CONROY & HACK, PC**

*Making Insurance Companies Keep Their Promises*

Matthew J. Conroy, Partner / MJC@schlawpc.com

August 11, 2023

**Via ECF**
Honorable Frederic Block
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: **Government Employees Insurance Company, et al. v. Zaitsev, et al.**
      **Docket No.: 1:20-cv-003495 (FB)(SJB)**

Dear Judge Block:

We write on behalf of all of the remaining Defendants and specifically, but not limited to, Alexandr Zaitsev, M.D. ("Zaitsev"), Anthony Benevenga, Charles Nicola, D.C., and Ridgewood Diagnostic Laboratories, L.L.C. ("Ridgewood") (collectively, "Defendants") in response to Plaintiffs' letter dated August 4, 2023 which seeks a pre-motion conference or, in the alternative, a briefing schedule for Plaintiffs' proposed motion pursuant to Fed. R. Civ. P. 26(a) and Fed. R. Evid. 702 to exclude the testimony of defense rebuttal expert, James Patrick Murphy, M.D. ("Dr. Murphy"). While Defendants have no problem with a pre-motion conference or just a briefing schedule, Defendants will be fully opposing the motion and if necessary, requesting a hearing on the issue.

There is no doubt that Dr. Murphy is a qualified expert who, pursuant to Rule 702 of the Federal Rules of Evidence, should be allowed to testify as a rebutting expert witness to Plaintiffs' alleged expert reports of Elizabeth Spratt, M.S., F-ABFT ("Spratt') and Naum Shaparin, M.D. ("Shaparin"). Rule 702. Testimony by Expert Witnesses sets forth:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

In this case, Dr. Murphy's extensive experience in pain management and drug testing is set forth on pages 2-3 of his expert rebuttal report. (*See* Exhibit "A"). [1] Moreover, even the court in the

---

[1] His background includes being triple board-certified in Anesthesiology, Pain Medicine, and Addiction Medicine; earning a Master of Medical Management (MMM) degree from the University of Southern California's Marshall School of Business; Assistant Clinical Professor in the Department of Anesthesiology and Perioperative Medicine at

www.schlawpc.com
666 Old Country Rd., Suite 900, Garden City, New York 11530
Tel: 1.800.745.1755 | Fax: 516.745.0844

**SCHWARTZ, CONROY & HACK, PC**
*Making Insurance Companies Keep Their Promises*

August 11. 2023
Page 2

Order attached to Plaintiffs' letter found that Dr. Murphy's extensive background in pain medicine, addiction treatment and drug testing makes Dr. Murphy well-suited to talk generically about when Universal Drug Testing (UDT) is proper; what proper orders look like; and the suitability of standing or blanket protocols. He can also explain and react to the types of testing used by practitioners in the field. Plaintiff's letter, Exhibit 4.

Indeed since 2016, Dr. Murphy has testified approximately twenty times in federal court as an expert witness regarding pain and/or addiction issues (including the proper utilization of risk mitigation strategies) and has never been disqualified as an expert witness. In *U.S.A. v. La*, 2022 WL 2707884 (M.D. Tenn 2022) the United States filed a Motion to Exclude or, In the Alternative, Limit Testimony of Dr. Murphy. The United States did not take issue with Dr. Murphy's qualifications or his ability to testify on general matters relevant to this case, such as the legitimate medical uses of the pain medications at issue. The Court barred Dr. Murphy from opinion on any matters of law or the doctor's mental state, or motivations about Courts, medical boards or the like. However, in this case, Dr. Murphy does not opine on those issues in his report. Moreover, although the United States complained of Dr. Murphy's review falling short of the level of patient-specific detail and analysis it felt was necessary, the Court was "[not] persuade[d]… to exclude the testimony. The United States has not identified any caselaw requiring an itemized, patient-by-patient breakdown in cases where a witness's analysis does not require it." *Id*. at *2. In this case, like *La*, Dr. Murphy's expertise will help the jury understand the evidence or to determine a fact in issue (*inter alia* UDT protocols).

Moreover, the report and opinion are clearly based on sufficient facts and data. This is a rebuttal report. Dr. Murphy reviewed every single exhibit attached to both Shaparin and Spratt's reports and the relevant deposition testimony. Moreover, although Plaintiffs take issue with the number of medical records Dr. Murphy reviewed (besides the extensive ones attached to Shaparin's opinion); it was Dr. Murphy's opinion that UDT is appropriate in the case of the Defendant's practice such that a greater number of patients was not necessary to review because Dr. Murphy is opining that UNIVERSAL testing is appropriate. Dr. Murphy testified it was his understanding that "almost all of them [patients]" had drug testing. (Exhibit 2 to Plaintiffs' letter, Deposition, p. 44). He also testified he did not ask for any other materials, nor did he have the need to review other materials to render his opinion (pp. 15-17). If Dr. Murphy's opinion was that drug testing was needed only in some cases, and not others, then GEICO's argument that Dr. Murphy should have reviewed each patient file (or a randomized sample of same) might be credible. In any event, Dr. Murphy's report indicated reviewed all of the exhibits attached to GEICO's own alleged expert opinion. Issues of Dr. Murphy's credibility are for the fact finder to weigh, not GEICO. Defendant's expert does not get excluded as a matter of law simply because GEICO does not like the opinion. As the *La* case stated, GEICO, like the government in *La* "have ample opportunity to highlight any flaws in Dr. Murphy's analysis on cross examination. The court, however, will not bar him from giving his opinions altogether." *Id*. at *2.

---

the University of Louisville; a Distinguished Fellow (DFASAM) by the American Society of Addiction Medicine; past president of the Kentucky Society of Addiction Medicine; and an extensive lecturer on the subject.

**SCHWARTZ, CONROY & HACK, PC**

*Making Insurance Companies Keep Their Promises*

August 11. 2023
Page 3

Moreover, Dr. Murphy's expert opinion clearly sets a medical and scientific basis for his opinion and the application of reliable principles and methods to the facts of this case, case easily meeting requirements 3 and 4 of FRE 702. Plaintiffs state Rule 26(a)(2)(B) requires a testifying expert's report to contain "the facts or data considered by the witness in forming" his or her opinions. "[C]ourts may strike expert reports if they are insufficiently detailed and complete to satisfy Rule 26(a)(2)." *Conte v. Newsday, Inc.,* No. 06-cv-4859, 2011 WL 2671216, at *4 (E.D.N.Y. 2011)(denying the motion to strike Plaintiff's expert report and providing time to provide a supplemental report"). Dr. Murphy's export report specifically states what documents he reviewed and what facts and data formed his opinion. (Exhibit A, p. 4 under "Materials Reviewed").

As for intent, Dr. Murphy specifically testified that "I cannot comment on the intent, because I can't get in their brains and know what they're thinking. But I can comment on the behavior and tell you that in my experience it's consistent with what I've seen and what I've experienced when physicians are trying to help their patients." (Plaintiffs' letter, Exhibit B, p 46). Courts have already found such an analysis appropriate.

> Dr. Murphy states that "the process, method, and actions of EHC providers were consistent with what I expect of health care providers whose intent is to care for patients and alleviate suffering." As the Court previously explained, Dr. Murphy can "compare the Defendants' conduct to that of a physician operating within the usual course. Such as statement 'does not go to the ultimate issue of the Defendants' state of mind because there is a layer of inference between the statement and the conclusion.'

*U.S. v. Herrell,* 2023 WL 3440228, *(*E.D. Kentucky, May 12, 2023)(Citations omitted) (allowing testimony after supplemental report). Moreover, contrary to the Plaintiffs' letter, Dr. Murphy's expert opinion and report were not based solely or even mostly on the need to prescribe opioids by the Defendants. Rather, his opinion, in part, stated, that the opioid crisis motivated UDT protocols because it helped in the development of trust within the patient-doctor relationship, and helped with adherence to the doctor's prescribed regimen, patient management, and prevented stigmatization. (Exhibit A, Murphy report, pp. 5-6).

The Plaintiffs' contention that Dr. Murphy's report relied on incorrect assumptions and was inconsistent with the evidence can be addressed upon cross-examination as credibility remains that of jury determination. As Plaintiffs' own cited case held: "To the extent that Gambardella's report or opinion is inconsistent with the evidence or is based on assumptions that plaintiffs deem erroneous, those areas are appropriate for cross-examination. While these contradictions or weaknesses in the expert's analysis may go to the weight of the expert's conclusions, these areas are not sufficiently problematic to warrant the exclusion of the entire report." *Conte*, *supra* at 9.

        Very truly yours,
        SCHWARTZ, CONROY & HACK, PC

By:   /s/ *Matthew J. Conroy*
       Matthew J. Conroy