UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GOVERNMENT EMPLOYEES INSURANCE
CO., et al.,

                                   Plaintiffs,

        –against–

ALEXANDR ZAITSEV, M.D., et al.,

                                   Defendants.

Docket No.: 1:20-cv-003495 (FB)(LKE)


## PLAINTIFFS' MEMORANDUM OF LAW IN REPLY AND in FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT


Respectfully submitted,

RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556-0926
Telephone:     (516) 357-3000
Facsimile:     (516) 357-3333

*Counsel for Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co.*


Of Counsel:
  Barry I. Levy, Esq.
  Michael A. Sirignano, Esq.
  Steven T. Henesy, Esq.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.      I. . GEICO is Entitled to Summary Judgment Regarding the Ridgewood Defendants' Self-Referrals and Unauthorized UDT Billing ........................................................................... 2

        A.      The Court Should Disregard Key Portions of Zaitsev's Declaration as a Sham .......................................................................................... 2

        B.      Even if the Court Were to Consider Zaitsev's Sham Affidavit, The Uncontroverted Evidence Establishes the Existence of the Defendants' Self-Referral Scheme ........................................................... 6

        C.      There is No Dispute That the Ridgewood Defendants Submitted and Were Paid For Billing for Unauthorized UDT ..................................... 8

        D.      The Ridgewood Defendants' Legal Arguments are Meritless ............................ 10

                1.      Self-Referral Liability and the Ridgewood Defendants' Ineligibility to Receive No-Fault Reimbursement ................................... 10

                2.      GEICO's Unjust Enrichment Claim is Not Duplicative ......................... 13

                3.      GEICO is Entitled to Summary Judgment on its Claim for a Declaratory Judgment ..................................................................... 14

II.     There is no Genuine Issue of Material Fact as to the Ridgewood Defendants' Medically Unnecessary UDT Billing .............................................................................................. 16

        A.      Dr. Murphy's Unsworn Expert Report is Inadmissible Hearsay and not Competent Evidence to Oppose GEICO's Motion ............................... 16

        B.      Even if the Court Were to Consider Dr. Murphy's Unsworn Report, it is Insufficient to Create an Issue of Fact as to the MDEA and 6-MAM Testing ...................................................................................... 17

III.    The Court Should Decline to Grant Summary Judgment in the Ridgewood Defendants' Favor Pursuant to Fed. R. Civ. P. 56(f) ...................................................................... 19

CONCLUSION ................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358 (E.D.N.Y. 2012) .................................................20

*Cambridge Med., P.C. v. Allstate Ins. Co.*, 899 F. Supp. 2d 227 (E.D.N.Y. 2012)................11, 13

*Condoleo v. Guangzhou Jindo Container Co.*,
    427 F. Supp. 3d 316 (E.D.N.Y. 2019) ...................................................................................17

*Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177 (N.Y. 2012)................................................13, 14

*Est. of Detwiler v. Offenbecher*, 728 F. Supp. 103 (S.D.N.Y. 1989)..........................................18

*Gov't Emps. Ins. Co. v. Gomez-Cortes*,
    S.D.Fla. Case No. 1:20-cv-21558-KMW, ECF No. 315 .....................................................15

*Gov't Emps. Ins. Co. v. Jacobson*,
    No. 15-cv-07236, 2021 WL 2589717 (E.D.N.Y. June 24, 2021)......................................11, 12

*Gov't Emps. Ins. Co. v. Mayzenberg*,
    No. 17-cv-2802, 2022 WL 5173745 (E.D.N.Y. Aug. 24, 2022) ...........................................20

*Gov't Emps. Ins. Co. v. Right Spinal Clinic, Inc.*,
    No. 8:20-cv-0802-KKM-AAS, 2022 WL 2466039 (M.D. Fla. July 6, 2022),
    *aff'd*, No. 23-11778, 2024 WL 4564168 (11th Cir. Oct. 24, 2024) ........................................15

*Government Employees Ins. Co. v. Mayzenberg*, 121 F.4th 404 (2d Cir. 2024) ...........................8

*Haraden Motorcar Corp. v. Bonarrigo*,
    No. 1:19-cv-01079, 2020 WL 1915125 (N.D.N.Y. Apr. 20, 2020) .......................................14

*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005)............................................................8

*Margo v. Weiss*, 213 F.3d 55 (2d Cir. 2000).................................................................................2

*Maryland Cas. Co. v. Rosen*, 445 F.2d 1012 (2d Cir. 1971) .......................................................15

*McCormick v. Jacobson*,
    No. 16-cv-01337, 2021 WL 5965038 (E.D.N.Y. Dec. 16, 2021)...........................................7

*Nuss v. Sabad*,
    No. 7:10-cv-0279, 2016 WL 4098606 (N.D.N.Y. July 28, 2016).........................................14

*Scott v. Harris*, 550 U.S. 372 (2007) ...........................................................................................8

*Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.*,
 401 F. Supp. 3d 433 (S.D.N.Y. 2018)..................................................................5

*Silva v. Smucker Nat. Foods, Inc.*,
 No. 14-cv-6154, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) .............................13

*State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313 (2005) ..................................12

*United State of America v. Stanton*,
 E.D. Kentucky Case No. 6:21-cr-00019-REW-HAI, ECF No. 341 .........................17

*United States v. Male Juvenile (95-CR-1074)*,
 121 F.3d 34 (2d Cir. 1997)..................................................................................7

*Western World Insurance Co. v. Stack Oil, Inc.*, 922 F.2d 118 (2d Cir. 1990) ..............................2

*Wingard v. GR Catalyst Two, LLC*,
 No. 1:20-cv-00432, 2023 WL 11835323 (N.D.N.Y. Mar. 8, 2023) .........................20

**Statutes and Other Authorities**

N.Y. Educ. Law § 6530(16).................................................................................12

N.Y. Pub. Health Law § 230-a .............................................................................12

N.Y. Pub. Health Law § 238-a..........................................................................10, 11

Fed. R. Civ. P. 56....................................................................................... *passim*

Fed. R. Evid. 702 and 703..................................................................................18

11 N.Y.C.R.R. § 65-3.16(a)(12) .......................................................................10, 12

2004-40 N.Y. St. Reg. 12, 14 (Oct. 6, 2004) at 14 ...................................................13

8 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure,* § 62:716 ...........................18

### PRELIMINARY STATEMENT

Plaintiffs (collectively "GEICO" or "Plaintiffs") respectfully submit this memorandum of law in reply and in further support of their motion pursuant to Fed. R. Civ. P. 56 for summary judgment against Defendants Alexandr Zaitsev, M.D. and Ridgewood Diagnostic Laboratory, L.L.C. (collectively, the "Ridgewood Defendants").

GEICO has moved for partial summary judgment on two theories. First, GEICO contends that the Ridgewood Defendants carried out an unlawful self-referral scheme through which Defendant Alexandr Zaitsev, M.D. ("Zaitsev") secretly owned and controlled two medical practices – Tri-State Multi-Specialty Medical Services, P.C. ("Tri-State") and Riverside Medical Services, P.C. ("Riverside") – that the Ridgewood Defendants admit referred hundreds of patients to Zaitsev's clinical laboratory, Ridgewood Diagnostic Laboratory, L.L.C. ("Ridgewood"). Second, GEICO contends that many of the bills submitted by the Ridgewood Defendants through Ridgewood to GEICO for urine drug testing ("UDT") misrepresented that they were eligible for reimbursement, when in fact were not because: (i) the UDTs were never authorized by a licensed physician; and (ii) the UDTs included medically useless testing.

In opposition, the Ridgewood Defendants contend that fact issues preclude summary judgment. But the supposed "issues" that are cited by the Ridgewood Defendants are not really legitimate issues, as they are derivative of Zaitsev's "sham" affidavit submitted in opposition to GEICO's motion, are conclusory and self-serving, and are contradicted both by objective record evidence as well as the Defendants' own prior sworn statements. In the alternative, the Ridgewood Defendants advance a series of flawed legal arguments, none of which survive scrutiny or preclude summary judgment.

At bottom, the evidence before the Court establishes that there is no genuine issue of material fact regarding: (i) Zaitsev's concealed but true ownership of Tri-State and Riverside and,

by extension, that the referral of drug testing of patients by those practices to Zaitsev's clinical laboratory, Ridgewood, were illegal self-referrals, rendering the resulting billing non-compensable and Ridgewood ineligible to receive no-fault benefits; and (ii) Ridgewood's submission of billing to – and receipt of payment from – GEICO for medical useless or otherwise unauthorized UDT services. For these reasons, and as outlined in detail below, GEICO's motion should be granted in its entirety.

## ARGUMENT

### I.    GEICO is Entitled to Summary Judgment Regarding the Ridgewood Defendants' Self-Referrals and Unauthorized UDT Billing

#### A.    The Court Should Disregard Key Portions of Zaitsev's Declaration as a Sham

Most of the purported "disputes" raised by the Ridgewood Defendants have been manufactured and are derivative of the assertions contained in Zaitsev's declaration. But, as discussed below, key portions of that declaration should be disregarded as a sham.

It is well settled that a party cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts," *Western World Insurance Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990) (quoting *Borthwick v. First Georgetown Securities, Inc.,* 892 F.2d 178, 181 (2d Cir. 1989)), or by submitting self-serving affirmations that contradict prior testimony asserted in depositions, interrogatories, or affidavits. *See Margo v. Weiss,* 213 F.3d 55, 60 (2d Cir. 2000).

There are several key instances in Zaistev's declaration in which he contradicts his prior sworn deposition testimony, his interrogatory responses, or both. These facts all concern Zaitsev's contradictory and unsupported contention that he supposedly sold his medical practices to Allan Weissman, M.D. ("Weissman") and, eventually, again to former physician Kristappa Sangavaram ("Sangavaram").

For example, in their opposition papers, the Ridgewood Defendants contend that "Dr. Zaitsev and Dr. Weissman disagree as to whether or not Dr. Zaitsev actually sold his practices". *See* Def. Mem., p. 10. And in his declaration, Zaitsev asserts that he and Weissman "had a handshake agreement at beginning [sic] of 2018, and we drafted a Practice Sale Agreement. I thus sold the practice to him. He became the owner." *See* Zaitsev Decl., ¶ 11. However, during his deposition, Zaitsev testified only that Weissman was "<u>supposed to</u>" purchase Interstate and Metropolitan:

> **Q:**    … Without Weissman signing an agreement, Tri-State and Riverside replaced Interstate and Metropolitan as medical practices; correct?
>
> **A:**    You can say that, but it's actually entities of Dr. Weissman who again, based on our handshake, **<u>supposed to acquire</u>**.

*See* Zaitsev Dep., 362:18-363:5. In that context, Zaitsev and Weissman do not disagree – in fact, they <u>agree</u>: the supposed "sale" to Weissman was never actually completed.

Along similar lines, in his declaration, Zaitsev indicates that he agreed to allow Weissman to pay the purported purchase price of the medical practices "over time, as reflected by the promissory note, as the practices brought in more revenue." *See* Zaitsev Decl., ¶ 18. To the extent that Zaitsev is suggesting that a supposed "promissory note" supports his contention that a sale was ever finalized, even informally, his deposition testimony contradicts this point as well. In truth, as Zaitsev repeatedly acknowledged during his deposition, Weissman never signed the referenced promissory note:

> **Q:**    Did Weissman ever sign a promissory note, promising to pay you the $13.6 million?
>
> **A:**    **<u>We didn't get to that point</u>**. He hired that divorce lawyer and she talked him out of it.

*See* Zaitsev Dep., 360:3-8.

Moreover, to the extent that Zaitsev's declaration can be read to assert that he subsequently sold his medical practices to Sangavaram[1], that contention is contradicted by Zaitsev and Defendant Metropolitan Interventional Medical Services, P.C. ("Metropolitan")'s responses to GEICO's interrogatories (both verified by Zaitsev). For instance, in GEICO's second interrogatory to Zaitsev:

> 2.    Identify and describe the nature and terms of any agreement for the purchase or transfer of any healthcare practice, patient files, equipment, or accounts receivables involving You or the Entity Defendants.
>
> **RESPONSE: I sold the Interstate Medical P.C. practice to Tristate Multi-Specialty which was owned by Dr. Allan Weissman. It is my understanding that Dr. Weissman subsequently sold the practice to Dr. Kristappa Sangavaram.**

*See* Supplemental Declaration of Stevem T. Henesy, Ex. "1". Zaitsev's response <u>makes no mention</u> of any supposed sale of his medical practices to Sangavaram – instead he falsely claims in his response that it was Weissman who sold the practices to Sangavaram.[2] Similarly, in Metropolitan's responses to GEICO's 22nd interrogatory, which were signed and verified by Zaitsev:

> 22.    Identify every agreement involving You and:…any of the other Defendants in this action.
>
> **RESPONSE: Notwithstanding and subject to the objections stated above, none.**

*See* Supplemental Declaration of Steven T. Henesy, Ex. "1". At bottom, when given the opportunity, Zaitsev and Metropolitan made no mention of any such sale or agreement to sell to either Weissman or Sangavaram. Zaitsev should not, at this stage, be heard to conjure one up to avoid summary judgment.

---

[1] As discussed below – and tellingly – Zaitsev never comes out and explicitly claims to have actually consummated the sale of the medical practices to Sangavaram. Instead, Zaitsev states only that "Sangavaram agreed to a sale price of \$13.6 million in 2019." *See* Zaitsev Decl., ¶ 30. Those carefully chosen words speak volumes. GEICO submits that, if Zaitsev could truthfully claim that he sold anything to Sangavaram, he would have said as much.

[2] This, too, is false. Weissman <u>assigned</u> the practices operating under the names Tri-State and Riverside to Sangavaram for no financial consideration (Henesy Decl., Ex. "34") – the actual assets were, according to the 2019 Sale Agreement (Henesy Decl., Ex. "39") still owned by Zaitsev as of 2019.

In this context, in considering whether to disregard an affidavit as a "sham", courts often look to whether the challenged affidavit is corroborated (or controverted) by other evidence. *See, e.g.*, *Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.*, 401 F. Supp. 3d 433, 438 (S.D.N.Y. 2018). Here, the evidence in this action expressly controverts Zaitsev's self-serving declaration. For example, the "whereas" clauses in the Assignment and Assumption Agreement between Weissman and Sangavaram (Henesy Decl., Ex. "34") – through which Weissman assigned Tri-State and Riverside to Sangavaram with no financial consideration – provide, among other things:

> WHEREAS [Tri-State and Riverside] were established for the purpose of **possibly** acquiring the business assets and patients of [Interstate and Metropolitan]; …
>
> WHEREAS [Tri-State and Riverside] operated **prior to the consummation of a contract for the sale** [of] Interstate and Metropolitan…
>
> WHEREAS [Weissman] **has decided not to pursue the acquisition** of Interstate and Metropolitan…

*See* Henesy Decl., Ex. "34", p. 1 (emphasis added). Of course, neither Weissman nor Sangavaram claims that any such sale occurred, either.

At bottom, besides Zaitsev in his declaration, no one – and no document – in this action has contended (let alone established) that Zaitsev ever sold his medical practices to either Weissman or Sangavaram. Because Zaitsev's unsupported assertions to that effect should be disregarded as a sham, the remaining evidence before the Court in this regard is uncontroverted: Zaitsev owned and controlled the medical practices from which hundreds of referrals were sent to the clinical laboratory he also owned, Ridgewood[3]. Because those referrals rendered the resulting UDT testing noncompensable, GEICO's motion should be granted in its entirety.

---

[3] In his declaration, Zaitsev makes reference to the fact that, during Weissman's alleged tenure as Tri-State and Riverside's "owner", Weissman supposedly "decided to use several diagnostic laboratories including Ridgewood." *See* Zaitsev Decl., ¶ 20. The Court should reject this contention, as it is not based on Zaitsev's personal knowledge – there is no record evidence to suggest this, much less any evidence as to how Zaitsev would be competent to swear to its truth. *See* Fed. R. Civ. P. 56(c)(4).

**B.    Even if the Court Were to Consider Zaitsev's Sham Affidavit, The Uncontroverted Evidence Establishes the Existence of the Defendants' Self-Referral Scheme**

Even if the Court were to accept Zaitsev's conclusory and contradictory denials, the uncontroverted evidence still entitles GEICO to summary judgment on its claims predicated on the Defendants' self-referrals. This conclusion is supported by numerous factors.

First, the Ridgewood Defendants do not – and cannot – dispute that, at the time that Zaitsev presented the 2019 Sale Agreement to Sangavaram, Interstate and Metropolitan – which were wholly owned by Zaitsev – were still the owners of certain assets, including the medical practices that had been operating under the names "Tri-State" and "Riverside". *See* Henesy Decl., Ex. "39". Even assuming Zaitsev permitted Tri-State and Riverside to operate using the assets owned by Zaitsev through Interstate and Metropolitan – namely, the patient base and clinic locations – Zaitsev was still the person with true beneficial ownership of those assets all along.

Second, the Ridgewood Defendants do not even attempt to claim Zaitsev ever actually sold these medical practices to Sangavaram. Indeed, in his declaration, Zaitsev carefully chooses his words, stating only that "Sangavaram agreed to a sale price of $13.6 million in 2019." *See* Zaitsev Decl., ¶ 30. <u>Zaitsev does not – and cannot – contend that he ever actually sold the medical practices to Sangavaram</u>.

In that context, and in keeping with the fact that the Ridgewood Defendants cannot raise a triable issue of fact, Sangavaram invoked the Fifth Amendment in response to virtually all substantive questions posed to him at this deposition, including whether he had entered into an agreement with Zaitsev to falsely pose as the owner of Tri-State and Riverside. *See* Sangavaram Dep., 18:10-14, 20:22-25. In their opposition, the Ridgewood Defendants devote several pages to a tortured analysis of whether a negative inference can be drawn against Zaitsev as the result of Sangavaram's Fifth Amendment invocation. But GEICO does not request an adverse inference

6

and, even without one, Sangavaram's Fifth Amendment invocation simply serves to underscore the lack of record evidence to support Zaitsev's conclusory contention that Weissman and Sangavaram were the supposed "owners" of the medical practices operating under the names Tri-State and Riverside. *See McCormick v. Jacobson*, No. 16-cv-01337, 2021 WL 5965038, at *4 (E.D.N.Y. Dec. 16, 2021) ("This is not to suggest that the jury would have drawn an adverse inference from his failure to testify, but simply a reflection on the absence of proof to support his alibi in the context of a case in which such testimony, as a practical matter, would appear to have been critical"); *see also United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 42 (2d Cir. 1997).

At bottom the Ridgewood Defendants cannot dispute that: (i) the 2019 Sale Agreement indicated that Interstate and Metropolitan – which were wholly owned by Zaitsev – were the owners of certain assets, including the medical practices that had been operating under the names "Tri-State" and "Riverside"; (ii) Zaitsev does not – and cannot – contend that he ever actually sold the medical practices to Sangavaram[4]; (iii) hundreds of Tri-State and Riverside patients were referred to Ridgewood, and Ridgewood billed GEICO for the resulting UDT; and (iv) GEICO paid Ridgewood $519,529.97 in reliance on that billing.

Against that backdrop, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on [ ] summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is what the Court is confronted with on this record. The Ridgewood Defendants' conclusory denials are insufficient to create a triable issue of fact, and GEICO's

---

[4] In keeping with the fact that Zaitsev never sold the medical practices to Sangavaram, the 2019 Sale Agreement provides that Sangavaram was to pay a $30,000.00 down payment towards the purchase price on the date the agreement was effective. *See* 2019 Purchase Agreement (Henesy Decl., Ex. "39"), Section 2.3.1. Sangavaram never made any such payment. *See* Zaitsev Dep., 464:11-14 (Henesy Decl., Ex. "3").

motion for summary judgment should be granted. *See*, *e.g.*, *Government Employees Ins. Co. v. Mayzenberg*, 121 F.4th 404, 414 (2d Cir. 2024) ("Although the [] Defendants dispute these facts, they have not met their burden of production to create a triable issue over them."); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (affirming summary judgment where the nonmoving party's "testimony – which was largely unsubstantiated by any other direct evidence – was so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit [it].").

### C. There is No Dispute That the Ridgewood Defendants Submitted and Were Paid For Billing for Unauthorized UDT

As outlined below, the Ridgewood Defendants take great pains attempting to convince the Court that their self-referrals had no effect on their ability to collect no-fault benefits from GEICO. However, the Ridgewood Defendants make no meaningful attempt to argue – either factually or legally – that they are not liable to GEICO as the result of their billing (and receipt of payment for) unauthorized UDT services. As set forth below, they are.

GEICO's opening papers outlined how the Ridgewood Defendants submitted numerous bills for UDT services which had never been authorized by a licensed healthcare provider. In particular, in dozens of instances, the Ridgewood Defendants billed GEICO for UDT services despite the fact that the "Toxicology Test Requisition" form was never signed by the supposed "ordering physician". GEICO enclosed copies of the actual bills and corresponding laboratory forms submitted for these unauthorized UDT services (Asmus Decl., Ex. "4"), and itemized the exact amount that GEICO paid the Ridgewood Defendants for those unauthorized services, $26,840.51 (Asmus Decl., ¶ 16), plus more than $8,454.76 in prejudgment interest (Henesy Decl., ¶ 50). In addition, GEICO enclosed copies of <u>all</u> the Ridgewood Defendants' billing for unauthorized UDT. *See* Asmus Decl., Ex. "4".

In opposition, the Ridgewood Defendants do not – and cannot – dispute that they billed unauthorized tests to GEICO or that they received payment for them. Nor do they take issue with GEICO's recitation of the relevant law concerning UDT prescriptions. *See* Opening Mem., Section II.D. Instead, their only argument in this regard appears to be that GEICO cannot establish that: (i) the Ridgewood Defendants had knowledge of their own submissions or that they intended to defraud GEICO; or (ii) GEICO reasonably relied on the Ridgewood Defendants' billing for unauthorized UDT. These arguments are couched with regard to GEICO's common law fraud and civil RICO claims which are not the subject of this motion. GEICO has moved on its New Jersey IFPA, unjust enrichment, and declaratory judgment claims – none of which require a plaintiff to establish intent or reliance and, besides GEICO's IFPA claim, do not require knowledge, either.

Moreover, the Ridgewood Defendants do not meaningfully contest their knowledge of the unauthorized UDT. Neither Zaitsev nor any other Defendant so much as mentions the unauthorized testing in a declaration. And notably absent is a declaration from Defendant Eugene Gorman, M.D., who testified at his deposition that, if a UDT requisition form was not signed by a physician, the test was unauthorized. *See* Gorman Dep., 42:14-22 (Henesy Decl., Ex. "6"). Given that the Ridgewood Defendants concede that they submitted dozens of bills for unauthorized UDT – and provide no explanation for doing so[5] – their intent in doing so was clear: to obtain reimbursement from GEICO for unauthorized tests.

---

[5] For example, the Ridgewood Defendants do not claim that these submissions were the result of any error or mistaken submission on their part. GEICO submits that, if the Ridgewood Defendants could have truthfully made such a claim, they would have done so when faced with irrefutable evidence of their submission of billing for unauthorized UDT.

### D.    The Ridgewood Defendants' Legal Arguments are Meritless

#### 1.    Self-Referral Liability and the Ridgewood Defendants' Ineligibility to Receive No-Fault Reimbursement

Unable to manufacture genuine issues of fact, the Ridgewood Defendants contend that a wide-ranging self-referral scheme in violation of New York and New Jersey law would not render Ridgewood ineligible for no-fault reimbursement. The Ridgewood Defendants are mistaken.

In particular, the Ridgewood Defendants do not appear to contest GEICO's recitation of the New York and New Jersey law prohibiting self-referrals, or that – had Zaitsev secretly owned and controlled Tri-State and Riverside – referrals from those practices would violate self-referral prohibitions. Instead, the Ridgewood Defendants contend that such violations would, according to them, have no effect whatsoever on the Ridgewood Defendants' liability to GEICO or their eligibility for no-fault insurance reimbursement.

The relevant law is to the contrary. To start, the Court can grant GEICO's motion without even deciding whether or not a self-referral scheme renders a healthcare provider ineligible for no-fault reimbursement pursuant to 11 N.Y.C.R.R. § 65-3.16(a)(12)[6] (the "Eligibility Regulation"). This is because New York Public Health Law § 238-a – which prohibits self-referrals for clinical laboratory services – contains specific provisions regarding the submission and compensability of billing generated as the result of an unlawful referral. For example, § 238-a(1)(b) provides that a healthcare provider may not present a bill seeking payment "for clinical laboratory services… furnished pursuant to a referral prohibited" by § 238-a. And if a healthcare provider does submit a bill generated from an illegal referral and receives payment on that bill, § 238-a(7) provides that

---

[6] As outlined in GEICO's opening papers, § 65-3.16(a)(12) provides that "[a] provider of health care services is not eligible for [no-fault] reimbursement … if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York or meet any applicable licensing requirement necessary to perform such service in any other state in which such service is performed."

the referring practitioner and the healthcare provider "shall be jointly and severally liable to the payor for any amounts so collected."

At bottom, § 238-a prohibits the submission of billing generated through an illegal self-referral, and provides that both the referring and billing providers are jointly and severally liable to the payor for any amounts collected on that violative billing. This disgorgement provision exists <u>exclusive of any effect self-referrals have on a provider's eligibility to collect no-fault benefits</u> under the Eligibility Regulation.

Against this backdrop, the Ridgewood Defendants do not contest that, for referrals from Tri-State or Riverside to Ridgewood – which, GEICO maintains, were unlawful self-referrals – GEICO paid Ridgewood $519,529.97. That figure represents the amount recoverable purely *via* the disgorgement provision in § 238-a(7), and does not require any finding concerning Ridgewood's eligibility to receive no-fault benefit under the Eligibility Regulation.

But even if § 238-a did not contain an explicit disgorgement provision, every court to consider the issue has found that "[i]n the event that Section 238–a is violated, neither the referring provider nor the provider of the service are entitled to payment from a third-party insurer…". *Cambridge Med., P.C. v. Allstate Ins. Co.*, 899 F. Supp. 2d 227, 232 (E.D.N.Y. 2012); *see also Gov't Emps. Ins. Co. v. Jacobson*, No. 15-cv-07236, 2021 WL 2589717, at *1 (E.D.N.Y. June 24, 2021) (citing *Fair Price Med. Supply Corp. v. ELRAC Inc.*, 12 Misc. 3d 119, 121–22 (N.Y. App. Term 2006)).[7]

---

[7] As the Ridgewood Defendants point out, in the Mayzenberg action, the Second Circuit certified the question of no-fault eligibility as it relates to illegal kickbacks to the New York State Court of Appeals. See Mayzenberg, 121 F.4th 404, *certified question accepted*, 42 N.Y.3d 1044, 249 N.E.3d 37 (2024). However, to the extent that the Court deems GEICO's position here as to the reach of the Eligibility Regulation to the Ridgewood Defendants' self-referrals to be potentially controlled by the Court of Appeals' answer to the certified question in *Mayzenberg*, the Court can still grant summary judgment for GEICO pursuant to the disgorgement provision in § 238-a(7) and reserve decision as it relates to the broader eligibility question.

These conclusions make good sense. The laws prohibiting self-referrals are "licensing" laws within the meaning of the Eligibility Regulation. In particular, it is professional misconduct for a licensed physician to willfully  or grossly negligently fail "to comply with substantial provisions of federal, state, or local laws, rules, or regulations governing the practice of medicine". *See* N.Y. Educ. Law § 6530(16). And violations of § 6530(16) are punishable only through actions against the physician's <u>license</u>, including suspension, limitation, annulment, or revocation of the license. *See* N.Y. Pub. Health Law § 230-a.

In this context, the fact that Zaitsev's license has not been subject to discipline because of this scheme is irrelevant because courts can look in the civil context beyond a facially valid license "to identify willful and material failure to abide by state and local law." *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 321 (2005). Clearly, if, when Zaitsev applied for his medical license – or when Ridgewood applied for a clinical laboratory license – he disclosed that he would regularly violate New York and New Jersey self-referral laws (or, by extension, Education Law § 6530(16)), the relevant licensing authorities would have declined to issue those licenses.

The Ridgewood Defendants do not offer any principled reason for their narrow interpretation of the Eligibility Regulation, and none exists. The stated purpose of section 65-3.16(a)(12) is "to assure that all providers rendering care under the No-Fault system are properly licensed in conformity with all applicable laws" and to "enhance the quality of care provided to eligible injured parties by insuring that those delivering reimbursable services are held to the appropriate professional standards." *See* 2004-40 N.Y. St. Reg. 12, 14 (Oct. 6, 2004) at 14 (emphasis added). Violations of the laws prohibiting self-referrals implicate these concerns. Indeed, as Judge Wexler noted regarding self-referrals in *Cambridge Med., P.C.*, "such financial

relationships are thought to taint the health care process, with referrals being driven more by profit than by patient care." 899 F. Supp. 2d 227, 232.

Therefore, because the Ridgewood Defendants' self-referrals made them, as a matter of law, liable to GEICO, GEICO's motion should be granted.

## 2.    GEICO's Unjust Enrichment Claim is Not Duplicative

The Ridgewood Defendants also argue that GEICO's unjust enrichment claim is duplicative of its fraud claims, and is therefore subject to dismissal. This is incorrect.

A claim for unjust enrichment is duplicative where the Court "cannot conceive of any set of facts upon which" a tort claim would fail but the plaintiff could "nonetheless succeed in proving unjust enrichment." *See Silva v. Smucker Nat. Foods, Inc.*, No. 14-cv-6154, 2015 WL 5360022, at *12 (E.D.N.Y. Sept. 14, 2015). Here, it is conceivable that GEICO's tort and statutory claims – for civil RICO and common law fraud – could fail but its unjust enrichment claim could nonetheless succeed. For example, even if the Ridgewood Defendants were found to not have intended to defraud GEICO or if GEICO's reliance was found to be unreasonable, but a jury were to find that the Ridgewood Defendants nonetheless engaged in a self-referral scheme that caused GEICO to pay them hundreds of thousands of dollars, the Ridgewood Defendants could be found to have been unjustly enriched at GEICO's expense – even if they did not commit a tort along the way.

In this context, the Ridgewood Defendants' reliance on *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) is unavailing. In *Corsello*, the harm complained of was the affixing of a phone terminal box to the plaintiffs' building. *Id*. at 1179. The claims for either trespass or condemnation could not fail while still allowing an unjust enrichment claim: Verizon was either entitled to place its box on the building, or it was not. *Id*. at 1180–83.

Instead, this action is more akin to the circumstances before the court in *Nuss v. Sabad*, No. 7:10-cv-0279, 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016). In *Nuss*, the court rejected a substantially identical argument (also predicated on *Corsello*) concerning the supposed duplicative nature of an unjust enrichment claim at the summary judgment stage:

> On summary judgment, [defendants] have failed to demonstrate that no reasonable trier of fact could find unjust enrichment … without establishing all the elements for one of [plaintiff]'s claims sounding in law. <u>For example, even if the jury determines that the [plaintiff] did not rely on [defendants]'s allegedly fraudulent statements, the Court could still find that [defendants] received a benefit … that aught to in equity and good conscience be turned over to [plaintiff]</u>. If this were the case, [plaintiff] would not have an adequate remedy at law, and [plaintiff]'s equitable claim[] for unjust enrichment … therefore [is] not duplicative of her other claims.

*Nuss*, at *11 (emphasis added, internal quotations and citations omitted); *see also Haraden Motorcar Corp. v. Bonarrigo*, No. 1:19-cv-01079, 2020 WL 1915125, at *10 (N.D.N.Y. Apr. 20, 2020) (distinguishing *Corsello*, noting that "[t]hat binary situation is not presented in this case— Plaintiff's other claims could fail while Plaintiff still recovers for unjust enrichment").

All of this is to say that there are substantial factual differences between the proof to be considered by a factfinder as to GEICO's fraud-based claims versus GEICO's unjust enrichment claim. The Ridgewood Defendants can be liable to GEICO for unjust enrichment without the factual underpinnings of reasonable reliance, knowledge, or intent. The Court should therefore reject the Ridgewood Defendants' contentions to the effect that the unjust enrichment claim is duplicative, and GEICO's motion should be granted.

### 3.    GEICO is Entitled to Summary Judgment on its Claim for a Declaratory Judgment

The Ridgewood Defendants also argue, in conclusory fashion, that granting GEICO summary judgment on its declaratory judgment claim would "lead to piecemeal determinations". *See* Def. Mem., p. 32. This argument is meritless and a misapprehension of the relevant law.

14

Contrary to the Ridgewood Defendants' contentions, *Maryland Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971) does not stand for the proposition that a declaratory judgment claim must resolve an entire <u>case</u>. Instead, it stands for the unremarkable precept that a declaratory judgment claim must resolve a controversy affecting the rights of the parties. *Rosen* involved a request for a declaration by an insurer as to who was piloting an aircraft that had crashed. However, the terms of the relevant insurance policy required coverage in the case regardless of the identity of the pilot. Under those circumstances, the Court found that "the determination that Rosen was in fact the pilot of the plane does not affect any legal relationships between the parties" and, therefore, declaratory relief was inappropriate. *Id*. at 1014.

By contrast, there is, by the Ridgewood Defendants' own admission, a controversy between the parties concerning the compensability of the UDT billing submitted through Ridgewood to GEICO. A declaration that, because of the record evidence, Ridgewood was ineligible to receive payment for that billing – and, by extension, GEICO has no obligation to make such payment – would clearly "affect the legal relationships between the parties".

In this context, federal district courts have granted plaintiff-insurers summary judgment on their claims for declaratory judgments, even where those declarations would not terminate the entire action. *See*, *e.g.*, *Gov't Emps. Ins. Co. v. Gomez-Cortes*, S.D.Fla. Case No. 1:20-cv-21558-KMW, ECF No. 315 (granting GEICO summary judgment on its declaratory judgment claim regarding some, but not all, of the defendants' pending no-fault insurance billing); *Gov't Emps. Ins. Co. v. Right Spinal Clinic, Inc.*, No. 8:20-cv-0802-KKM-AAS, 2022 WL 2466039, at *10 (M.D. Fla. July 6, 2022), *aff'd*, No. 23-11778, 2024 WL 4564168 (11th Cir. Oct. 24, 2024) (same).

15

Because the request declaratory judgment would affect the legal relationships between GEICO and the Ridgewood Defendants as they relate to the pending UDT billing, GEICO's motion for summary judgment should be granted.

## II.     There is no Genuine Issue of Material Fact as to the Ridgewood Defendants' Medically Unnecessary UDT Billing

GEICO's opening papers pointed out that the Ridgewood Defendants frequently billed for certain UDT services – specifically, testing for 6-MAM (a heroin metabolite) and methylenedioxyethylamphetamine ("MDEA") – but that testing for those substances was medically useless. In support of this contention, GEICO directed the Court to the opinions of GEICO's expert forensic toxicologist, Elizabeth Spratt, M.S., F-ABFT, who opined that this testing was not necessary. By contrast, GEICO pointed out that the Ridgewood Defendants had not retained a toxicology expert (even in rebuttal) and were otherwise not qualified to opine as to the necessity of this testing. The Ridgewood Defendants oppose GEICO's contentions through a single argument: that the Ridgewood Defendants' medical expert, Dr. James Patrick Murphy, supposedly opined that every aspect of the Ridgewood Defendants' UDT services was medically unnecessary. Therefore, the Ridgewood Defendants contend, the supposedly-dueling expert opinions preclude summary judgment. The Ridgewood Defendants are mistaken.

### A.     Dr. Murphy's Unsworn Expert Report is Inadmissible Hearsay and not Competent Evidence to Oppose GEICO's Motion

First, in opposition to GEICO's motion, the Ridgewood Defendants attach the unsworn report of their rebuttal expert, Dr. Murphy. Critically, however, <u>there is no declaration from Dr. Murphy swearing to the truth of his report's contentions</u>.[8]

---

[8] This omission is, in many respects, unsurprising given Dr. Murphy's troubling testimony in this case and others. For example, Dr. Murphy's deposition testimony in this case indicated that he had not reviewed <u>any</u> of the medical files about which he was supposedly opining. *See, e.g.*, ECF No. 186-1, Section II.A. Moreover, Dr. Murphy – who is a frequent criminal defense expert in opioid "pill mill" cases in which he is sometimes called to defend a physician's

In that context, "Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e), and cannot be used [on] a motion for summary judgment without additional affidavit support." *Condoleo v. Guangzhou Jindo Container Co.*, 427 F. Supp. 3d 316, 330 (E.D.N.Y. 2019).

Besides Dr. Murphy's report, the Ridgewood Defendants do not cite to any other evidence supposedly raising an issue of fact as to their MDEA and 6-MAM testing. And they admit that: (i) they submitted numerous bills to GEICO for 6-MAM and MDEA UDT (Rule 56.1 Counterstatement, ¶¶ 197, 199); and (ii) GEICO voluntarily paid the Ridgewood Defendants at least $120,144.43 as reimbursement for 6-MAM UDT and at least $92,115.43 as reimbursement for MDEA UDT (*id.*, ¶¶ 198, 200). Therefore, because Dr. Murphy's report is unsworn, and because the Ridgewood Defendants do not oppose GEICO's motion in this regard through any other means, the Court should grant GEICO's motion inasmuch as it is predicated on the Ridgewood Defendants' submission of billing for medically useless MDEA and 6-MAM testing.

## B.    Even if the Court Were to Consider Dr. Murphy's Unsworn Report, it is Insufficient to Create an Issue of Fact as to the MDEA and 6-MAM Testing

Even if the Court were to consider Dr. Murphy's unsworn report, the Ridgewood Defendants cannot point the Court to any specific reference, examination, or analysis in Dr. Murphy's report regarding the propriety of the Ridgewood Defendants' 6-MAM and MDEA testing. In fact, Dr. Murphy does not so much as <u>mention</u> the 6-MAM or MDEA testing once in

---

underutilization of UDT when prescribing opioids – has given testimony in other cases that stands to directly contradict many of the supposed "opinions" he provided in this case. In fact, in at least one case, Dr. Murphy gave testimony suggesting that UDT protocols – similar to those about which he approvingly opines here – <u>might actually harm patients</u>. *See*, *e.g.*, *United State of America v. Stanton*, E.D. Kentucky Case No. 6:21-cr-00019-REW-HAI, ECF No. 341, p. 73 ("a lot of states sometimes, they'll recommend, or they'll demand, a drug screen prior to treatment, and they don't give evidence as to why -- why they should do it. <u>And there's no evidence to say it benefits patients, but maybe it harms patients.</u>").

his report. Instead, the Ridgewood Defendants appear to rely on the sweeping and conclusory language in Dr. Murphy's report to the effect that all of the Ridgewood Defendants' testing was supposedly proper. The Ridgewood Defendants' reliance on this unsupported conclusion is insufficient to create a triable issue regarding the 6-MAM and MDEA testing.

While the Court has denied GEICO's motion to strike Dr. Murphy's report (ECF Entry Dated June 3, 2024), that does not guarantee that the Ridgewood Defendants can create an issue of fact as it relates to the 6-MAM and MDEA testing. Dr. Murphy's opinions may be admissible under Fed. R. Evid. 702 and 703, but a finding of admissibility does not "make summary judgment impossible whenever a party has produced an expert to support its position". *Est. of Detwiler v. Offenbecher*, 728 F. Supp. 103, 140 (S.D.N.Y. 1989).[9] "[C]ourts have recognized that summary judgment is appropriate where the nonmoving party relies solely on an expert opinion that is not based upon specific facts." *Id.*, at 140.

That is precisely the circumstance here. The Ridgewood Defendants cite only to Dr. Murphy's report in their attempt to create an issue of fact regarding the 6-MAM and MDEA testing. Tellingly, in his declaration, Zaitsev does not even attempt to pass on the efficacy of the testing provided through his own clinical laboratory. And Dr. Murphy's "opinion" is not supported by citation to any specific facts, documents, or sources concerning the actual substances for which the Ridgewood Defendants were supposedly testing through their UDT. Moreover, Dr. Murphy's "opinion" is not even based on a review of the very testing records about which he is supposedly opining. For example, Dr. Murphy testified that he did not know which patients he was offering his opinions about:

> **Q:** Okay.· I'll ask you again then. Which are the patients about whom you are offering an opinion?

---

[9] *See also* 8 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure,* § 62:716 ("Conclusory affidavits, even from expert witnesses, do not provide a basis upon which to grant or deny motions for summary judgment.").

**A.**     Specifically, those four patients right there. And then generally, the majority of patients that would attend the clinic, but not -- I cannot generalize my comment to specifically include every single patient that attends that clinic.

*See* ECF No. 175-2, p. 54. Without even a cursory discussion of the reasonableness or efficacy of the specific drugs for which the Ridgewood Defendants supposedly tested – much less an actual examination of the 6-MAM and MDEA testing at issue on this motion  – to the extent the Court were to consider Dr. Murphy's unsworn report, it is insufficient to create an issue of fact.

**III.    The Court Should Decline to Grant Summary Judgment in the Ridgewood Defendants' Favor Pursuant to Fed. R. Civ. P. 56(f)**

Finally, the Ridgewood Defendants argue that, at their urging, this Court should grant them summary judgment GEICO's civil RICO and fraud claims – for which GEICO does not seek summary judgment – because, according to the Ridgewood Defendants, "GEICO cannot demonstrate fraud". The Ridgewood Defendants are incorrect.

First, and most notably, the Ridgewood Defendants specifically opted against making a summary judgment motion of their own. Given that the Ridgewood Defendants' putative Rule 56(f) argument was raised, for the first time, in their opposition to GEICO's motion – and was raised about claims not originally subject to this motion, without any notice to GEICO – the Court should reject the argument out of hand. *See, e.g.*, *Wingard v. GR Catalyst Two, LLC*, No. 1:20-cv-00432, 2023 WL 11835323, at *9 (N.D.N.Y. Mar. 8, 2023) ("The Court notes that Rule 56(f) directs the court to "giv[e] notice and a reasonable time to respond" before granting a summary judgment motion. … Because the [] Defendants raised this argument in their opposition, rather than filing a separate motion…the procedural requirements of Rule 56(f) have not been satisfied.").

Second, and in any event, the record before the Court is nonetheless replete with evidence to support GEICO's RICO and fraud claims. For example, inasmuch as intent is concerned, the record is replete with evidence of Zaitsev's intent, including evidence concerning: (i) Zaitsev's

19

motive to hide his ownership in the medical practices sending patients to his lab because of the damage to his reputation via the numerous fraud lawsuits filed against him; (ii) Zaitsev's admitted awareness of the prohibitions against self-referrals; (iii) Zaitsev's ownership of funding companies, whose agreements with Tri-State and Riverside dictated the processes by which revenue came in; and (iv) Zaitsev's admitted attendance at a meeting with attorneys and Weissman to prepare for a Tri-State examination under oath. This is more than sufficient evidence to create an issue of fact regarding the Ridgewood Defendants' intent. *See*, *e.g.*, *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-cv-2802, 2022 WL 5173745, at *9 (E.D.N.Y. Aug. 24, 2022) (granting summary judgment for GEICO on civil RICO and fraud claims, and noting that, "it beggars belief to suggest that Mayzenberg did not know that paying for patient referrals would void …no-fault claims; his actions make sense only if he knew that fact.").

The Ridgewood Defendants' reliance arguments do not fare any better. Similar reliance arguments in other no-fault insurance fraud matters have been summarily rejected as "absurd". *See*, *e.g.*, *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 375 (E.D.N.Y. 2012) ("The suggestion that Allstate bore the responsibility to discover that defendants had covertly allotted ownership and control of the PCs to non-physicians is absurd. Allstate was entitled to rely on the representations that defendants made to it and to the New York Department of State regarding the ownership of the PCs.").

Ultimately, even if the Court were to entertain the Ridgewood Defendants' procedurally defective Rule 56(f) "motion", that application should be denied.

## **CONCLUSION**

For the reasons stated herein, GEICO's motion should be granted in its entirety, together with such other and further relief as to the Court may seem just and proper.

Dated: March 28, 2025
      Uniondale, New York

RIVKIN RADLER LLP

By:    /s/ *Steven T. Henesy*
      Barry I. Levy, Esq.
      Michael A. Sirignano, Esq.
      Steven T. Henesy, Esq.
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co.*

4913-0675-8686, v. 3

21